# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ACCLAIM SYSTEMS, INC., | CIVIL ACTION |
| *Plaintiff,* | |
| v. | No. 17-cv-5607 |
| NORTHROP GRUMMAN CORP., ET AL., | |
| *Defendants*. | |

Goldberg, J.                                                                                                                  January 29, 2019

**Memorandum Opinion**

Plaintiff, Acclaim Systems, Inc., has brought this civil action against Defendants, Northrop Grumman Corporation ("Northrop"), TASC Technical Services, LLC ("TASC"), and Geometric Results, Inc. ("GRI"). Plaintiff alleges that Defendants tortiously interfered with Plaintiff's contractual relationships by hiring employees who were subject to non-compete agreements.

Defendants' Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c) is presently before me. For the reasons stated below I will grant Defendants' motion and dismiss this case in its entirety.

**I.     PROCEDURAL BACKGROUND**

On November 21, 2017, Plaintiff filed a Complaint against Defendants Northrop, TASC, and GRI in the Philadelphia Court of Common Pleas, alleging tortious interference of contractual relationships by Defendant Northrop (Count I), aiding and abetting tortious interference with contractual relationships by Defendants TASC and GRI (Count II), and civil conspiracy by all

1

Defendants (Count III). On December 14, 2017, Defendants removed the case to this Court pursuant to 28 U.S.C. § 1441.

## II. FACTS ALLEGED IN THE COMPLAINT

Plaintiff has alleged the following facts:[1]

### A. The Parties

1. Plaintiff is a "technical consulting firm which provides highly skilled software and technology analysts and consultants to its own end-use clients." (Compl. ¶ 4, ECF No. 1.)

2. Defendant Northrop is a "leading global security company" that "participate[s] in many high-priority defense and government programs in the United States and abroad." Northrop Grumman Corp., Annual Report (Form 10-K) (Dec. 31, 2017).

3. Defendant TASC is a "professional services firm, which, among other services, provides contract labor to companies throughout the United States." (Compl. ¶ 2(c).) TASC is a "competitor of Acclaim in the staffing industry." (Id. ¶ 12.)

4. Defendant GRI is a "managed services provider which among other matters, provides supplier management, onboarding services and payment systems to its clients." At some point "[d]uring the time period relevant to this dispute," GRI purchased the company IQNavigator ("IQN"), which provided services to TASC and Northrop Grumman that were similar to those provided by Plaintiff. (Id. ¶ 13.) Beginning in 2013, TASC would pay Acclaim for the consultants through GRI/IQN acting as the middle-man. (Id. ¶¶ 52–55.)

---

[1]   On a motion for judgment on the pleadings, I must view the facts and inferences to be drawn from the pleadings in the light most favorable to Plaintiff, the non-moving party. Green v. Fund Asset Mgmt., L.P., 245 F.3d 214, 220 (3d Cir. 2001).

B. **The Relevant Contracts**

5. In June 2009, Plaintiff began to supply consultants directly to Defendant Northrop. In February 2010, Plaintiff and Defendant TASC entered into an agreement (the "Plaintiff-TASC Agreement"), whereby Plaintiff agreed to supply its consultants to TASC, and TASC would then supply the consultants to its client, Northrop. TASC and Northrop subsequently entered into a contract (the "TASC-Northrop Agreement"), which contained the same provisions as the Plaintiff-TASC Agreement, but also included additional terms related to pricing, intellectual property, and supplier arrangements. (Id. ¶¶ 4, 10, 14–15; TASC Answer Ex. A, ECF No. 15-1; TASC Answer Ex. B, ECF No. 15-2.)

6. Under the Plaintiff-TASC Agreement, the consultants that were loaned to TASC continued to be employees of Plaintiff. Specifically, § 3.17(b) of the Plaintiff-TASC Agreement provided:

> It is mutually agreed that any of Associate Partner's [Plaintiff's] Assigned Employees performing services under this Agreement or any order shall remain employees of Associate Partner [Plaintiff] subject to its right of direction, control, and discipline, and shall neither become employees of Client [Defendant Northrop] nor TASC, nor be entitled to any rights, benefits or privileges of Client [Defendant Northrop] employees. (Id.)

7. Similarly, § 5.1 of the Plaintiff-TASC Agreement provided:

> At all times during the term of this Agreement, Associate Partner [Plaintiff] shall retain its independent status, and Associate Partner [Plaintiff] and its employees shall at all times be independent contractors to Client [Defendant Northrop] and TASC. The employees assigned to Client [Defendant Northrop] under this Agreement shall remain employees of Associate Partner [Plaintiff] and shall not by reason of their assignment to Client [Defendant Northrop] become employees of Client [Defendant Northrop] or TASC. (Id.)

8. The Plaintiff-TASC Agreement also provided an exception in § 2.6 whereby Defendant Northrop could hire the loaned consultants from Plaintiff:

> Northrop Grumman reserves the right to hire, as a Northrop Grumman full-time employee, any Contract Labor Personnel who is, at that time, performing Services for Northrop Grumman, or has, at any time in the past, performed Services for Northrop Grumman. (Id.)

In short, the Plaintiff-TASC Agreement permitted Defendant Northrop to hire Plaintiff's consultants who were presently, or had been, working for Defendant Northrop as consultants. The Plaintiff-TASC Agreement required Defendant Northrop pay a fee upon hiring one of Plaintiff's consultants (i.e., the "conversion fee). The amount of this conversion fee varied based on the amount of time that the consultant had been working for Defendant Northrop prior to being hired. The conversion fee could be waived if the resource had been assigned at Defendant Northrop for ninety days or more. (TASC Answer Ex. A.)

9. Plaintiff alleges that "legacy resources" (i.e., consultants who had provided services to Northrop prior to the effective date of the Plaintiff-TASC Agreement) were exempted from this reservation of rights. (Compl. ¶ 16.) Plaintiff also asserts that Northrop was required to obtain Plaintiff's consent before hiring any Acclaim resources. (Id. ¶ 21.) However, neither assertion is supported by the Plaintiff-TASC Agreement. This Agreement contains only one limitation on Defendant Northrop's ability to directly hire Plaintiff's consultants, which was the conversion fee payment. (TASC Answer Ex. A.)

### C. The Alleged Non-Compete Agreements and 2014 Hire

10. Because of the highly competitive nature of the technology consulting industry, Plaintiff alleges that it "protects its investment" in its consultants "by guarding against the hiring away of its resources by competing vendors through narrowly tailored restrictive covenants [i.e., non-compete agreements that prohibited the consultants from working for Plaintiff's competitors]." (Id. ¶ 6.) However, Plaintiff has neither attached nor set out the details of these employment contracts or non-compete agreements in its Complaint.

11. As noted above, § 2.6 of the Plaintiff-TASC Agreement permitted Defendant Northrop to directly hire Plaintiff contestants as full-time employees. And, in fact, Northrop hired several Plaintiff consultants prior to September 2014. Then, in September 2014, TASC attempted to directly hire one of Plaintiff's consultants that had allegedly signed a non-compete agreement, which prohibited the consultant from working for a competitor (like TASC) for one year from the end of the employment contract (i.e., a "restrictive covenant"). Upon discovering that the consultant could not be hired due to the restrictive covenant, TASC returned the consultant within two weeks. (Id. ¶¶ 16, 24–36.)

12. Sometime in mid-2015, Northrop and/or TASC attempted to hire a Plaintiff consultant to work directly for Northrop. Upon Plaintiff's objection, the consultant was returned to Plaintiff. Plaintiff informed TASC that this conduct had resulted in a breach of the Plaintiff-TASC Agreement. The Parties attempted to renegotiate the contract, but these efforts failed because TASC allegedly refused to admit to interfering with contractual relations by improperly "poaching" Plaintiff's

consultants. The parties, however, continued to perform under the Plaintiff-TASC Agreement until sometime in October or November 2016. (Id. ¶¶ 40, 42, 43–46.)

13. In 2016, the parties began to disagree about Defendant's TASC's method and timeliness of payments to Plaintiff. Because of these payment disputes, Plaintiff instructed its consultants not to report to work beginning on November 1, 2016. (Id. ¶¶ 52–58, 61.)

**D. The Alleged Tortious Interference with the Contracts of Plaintiff Consultants, Bhutta and Vo**

14. Plaintiff's Complaint alleges that, in October or November of 2016, Defendant Northrop directly hired two of Plaintiff consultants, Oneeb "Sam" Bhutta and Thach Vo, as full-time employees. Plaintiff claims that these hires were completed with "collaboration and assistance" from Defendants TASC and GRI. Specifically, Plaintiff claims that Northrop "through and with the assistance of GRI and/or TASC" allegedly misrepresented to Plaintiff that the project Vo had been working on had ended before his anticipated end date. Plaintiff also alleges that GRI failed to notify Plaintiff of Northrop's direct hiring of Vo and Bhutta, which it typically did. Plaintiff provides no further facts regarding these hires, nor any details regarding how TASC and GRI assisted with Northrop's hiring of Bhutta. (Id. ¶¶ 63, 65, 69, 70.)

15. Plaintiff further alleges that the employees (Bhutta and Vo) violated their restrictive covenants through their employment with Northrop. Plaintiff explains that these restrictive covenants prohibited the consultants from conducting business at Defendants Northrop and/or TASC for one year from the end of the consultant's

6

contract with Plaintiff. Plaintiff avers that all three Defendants were aware of these restrictive covenants.[2] (Id. ¶¶ 71, 75, 76.)

## III. LEGAL STANDARD

A Motion for Judgment on the Pleadings under Rule 12(c) is viewed under the same standards as a Rule 12(b)(6) motion for failure to state a claim. Zimmerman v. Corbett, 873 F.3d 414, 417–18 (3d Cir. 2017), cert. denied, 138 S. Ct. 2623 (2018); Caprio v. Healthcare Revenue Recovery Grp., LLC, 709 F.3d 142, 146–47 (3d Cir. 2013). To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

The plausibility standard requires more than a "sheer possibility that a defendant has acted unlawfully." Id. To determine the sufficiency of a complaint under Twombly and Iqbal, a court must take the following three steps: (1) the court must "take note of the elements a plaintiff must plead to state a claim;" (2) the court should identify the allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth;" and (3) "where there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." Burtch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011) (alterations and citations omitted).

---

[2] As explained infra, Plaintiff also alleges that two more "legacy resources"—consultants who had provided services to Defendant Northrop prior to the effective date of the Plaintiff-TASC Agreement—were hired as direct employees by Northrop on or after November 1, 2016, conduct which allegedly violated the consultants' restrictive covenants, as well as the Plaintiff-TASC Agreement. (Compl. ¶ 72.)

## IV. DISCUSSION AND ANALYSIS

### A. Tortious Interference with Contractual Relationship (Count One)

Plaintiff alleges that Northrop tortiously interfered with its contractual relationships with Bhutta and Vo by hiring them as full-time employees, which violated their restrictive covenants. (Compl. ¶¶ 74–85.) Northrop responds that (1) Plaintiff has failed to allege sufficient facts to establish the existence of enforceable restrictive covenants; (2) Northrop's conduct was justified; and (3) Northrop did not specifically intend harm to Plaintiff. (Defs.' Mot. at 3, ECF No. 32-1.) Northrop urges that § 2.6 of the Plaintiff-TASC Agreement provided justification for Northrop's conduct. (Id. at 7–11.) Plaintiff responds that the Complaint contains sufficient facts to sustain its claim for tortious interference with contractual relationships, and that Northrop's right to hire Plaintiff's consultants under the Plaintiff-TASC Agreement was terminated by TASC's alleged material breach of the contract in September 2014. (Pl.'s Reply at 10, ECF No. 37-1.)

To state a claim for tortious interference with contractual relationships, a plaintiff must sufficiently allege the following: (1) the existence of a contractual or prospective contractual or economic relationship between the plaintiff and a third party; (2) purposeful action by the defendant, specifically intended to harm an existing relationship or intended to prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) legal damage to the plaintiff as a result of the defendant's conduct. Acumed LLC v. Advanced Surgical Servs., Inc., 561 F.3d 199, 212 (3d Cir. 2009).

#### 1) Existence of a Contract

Plaintiff must first establish a contractual relationship by sufficiently alleging the existence of the restrictive covenants between Plaintiff and consultants Bhutta and Vo. Under Pennsylvania law, there are several limitations to the enforceability of a restrictive covenant: "The law in this

Commonwealth for more than a century has been that in order to be enforceable a restrictive covenant must satisfy three requirements; (1) the covenant must relate to either a contract for the sale of goodwill or other subject property or to a contract for employment; (2) the covenant must be supported by adequate consideration; and (3) the application of the covenant must be reasonably limited in both time and territory." See Piercing Pagoda, Inc. v. Hoffner, 351 A.2d 201, 210 (Pa. 1976).

While the Complaint notes the existence of the restrictive covenants, Plaintiff has not attached them to the Complaint or set out any of the aforementioned elements noted above that are necessary to establish the enforceability of the contracts. The Complaint's averments are insufficient to establish the necessary pleading standards under Iqbal and Twombly.

While Plaintiff could be granted leave to amend its complaint, such leave would be futile because, as discussed infra, my decision rests upon the existence of Defendants' justification for their conduct (i.e., the third element). Given that Plaintiff is required to plead all four elements of an intentional interference with contractual relations claim, the insufficient pleading of any one of the four elements results in a judgment in favor of Defendant. Because Plaintiff cannot establish the third element (i.e., lack of justification), discussed below, I need not address any of the other elements.

### 2) Justification

Northrop also argues that the alleged interference was justified because the Plaintiff-TASC Agreement clearly provided Northrop with the ability to hire Plaintiff's consultants as full-time employees. (Defs.' Mot. at 9.) Plaintiff responds that Defendant Northrop acted without justification because two sections of the Plaintiff-TASC Agreement limited and/or forbade Northrop and TASC from hiring Plaintiff consultants. (Pl.'s Resp. at 14, ECF No. 37.)

Plaintiff points to § 3.17(b) of the contract, which provides that Plaintiff's consultants will remain under its control while they are assigned to Plaintiff's client—in this case Northrop. (See supra ¶ 7.) Plaintiff also relies upon on § 5.1, which similarly says that contractors "shall not by reason of their assignment to Client become employees of Client or TASC." (See supra ¶ 8.)

But these provisions ignore Northrop's explicit authorization in § 2.6 to hire Plaintiff's consultants. While §§ 3.17(b) and 5.1 pertain to the continuing role of the consultants as Plaintiff's employees while they are assigned to Northrop or TASC and acting as independent contractors, § 2.6 clearly allows Northrop the right to hire Plaintiff's employees. These three provisions are neither inconsistent nor incompatible. See Engelhard Corp. v. NLRB, 437 F.3d 374, 381 (3d Cir. 2006) (noting one of "the well-established principles of contract construction—to read, if possible, all provisions of a contract together as a harmonious whole"); Shipping Corp. of India, Ltd. v. Sun Oil Co., 569 F. Supp. 1248, 1254 (E.D. Pa. 1983) (emphasizing that a court "should attempt to read all provisions as being compatible whenever possible").

In short, §§ 2.6, 3.17(b), and 5.1, when read together, do not prohibit Northrop from hiring Plaintiff's resources. The fact that TASC and GRI may not have had contractual authority to hire Plaintiff's consultants does not matter for the claim of tortious interference, which is only directed against Northrop.[3] In light of § 2.6, Plaintiff has failed to plausibly support with sufficient factual matter its allegation that Northrop acted without justification.

Plaintiff also argues that the justification provided under § 2.6 of the Plaintiff-TASC Agreement is somehow invalid because TASC materially breached the Agreement in 2014 when

---

[3] Inexplicably, Plaintiff argues that §§ 3.17(b) and 5.1 are proof that Defendants TASC and GRI were "explicitly forbidden from hiring Acclaim's consultants." (Compl. ¶ 19; Pl.'s Reply at 3, ECF No. 37-1.) This argument is inconsequential because Plaintiff has alleged tortious interference only against Defendant Northrop, and as stated above, Defendant Northrop was permitted to hire Plaintiff's consultants under the terms of the Plaintiff-TASC Agreement.

10

Defendant TASC attempted to hire a Plaintiff consultant. Plaintiff explains that the attempted hiring in 2014 terminated any right to hire Plaintiff's consultants pursuant to the Plaintiff-TASC Agreement possessed by Northrop. (Pl.'s Resp. at 15.) Northrop replies that TASC did not breach the Plaintiff-TASC Agreement, and that TASC's conduct in September 2014 had no bearing on Northrop's right to hire Bhutta and Vo in November 2016. (Defs.' Reply at 4, ECF No. 45.)

Plaintiff's argument is without merit. Under New Hampshire law, which governs any dispute arising from the contract per the Plaintiff-TASC Agreement, a party claiming breach must prove that the alleged conduct caused some sort of harm. See Found. Seacoast Health v. Hosp. Corp. of Am., 71 A.3d 736, 747 (N.H. 2013); Miami Subs Corp. v. Murray Family Trust and Kenneth Dash P'ship, 703 A.2d 1366 (N.H. 1997) (holding that any breach of agreement was immaterial due to absence of damages); 23 Williston on Contracts § 63.3, at 439–40 (4th ed. 2002) ("[W]here a breach causes no damages or prejudice to the other party, it may be deemed not to be 'material.'"). Because Plaintiff has not alleged any damage or prejudice resulting from this temporary incident, I find that this conduct did not constitute a breach of contract. And indeed, Plaintiff acknowledges in its Complaint that even after the 2014 incident, Plaintiff and TASC continued to conduct business pursuant to the Plaintiff-TASC Agreement. (See supra ¶¶ 10–12.)

Accordingly, Plaintiff's theory that TASC's alleged breach of the Plaintiff-TASC Agreement in September 2014 negated any potential justification for Northrop's actions in 2016 is meritless.[4] Because Plaintiff has failed to state a claim for tortious interference with contractual relationships, I will grant Defendants' Motion for Judgment on the Pleadings as to Count I.

---

[4] Defendants have advised me that, after they filed the present motion, a decision was reached in a related state court case between Plaintiff and Defendant TASC which directly addressed this argument. (ECF No. 33.) In TASC Technical Services, LLC v. Acclaim Systems Inc., et al., No. 161003225 (Pa. C.P. May 18, 2018), the Honorable Gary S. Glazer of the Philadelphia Court of Common Pleas granted Defendant TASC's motion for summary judgment,

11

**B. Aiding and Abetting Tortious Interference with Contractual Relationships (Count II) and Civil Conspiracy (Count III)**

Because Plaintiff has not sufficiently alleged facts to support its claim of tortious interference with contractual relationships, its other two claims—aiding and abetting tortious interference with contractual relationships and civil conspiracy—fail as well, as both require the underlying tortious conduct of Count I. See Friedman v. F.E. Myers Co., 706 F. Supp. 376, 382 (E.D. Pa. 1989) (finding that, under Pennsylvania law, which relies on § 876 of the Restatement (Second) of Torts, a defendant must have committed an underlying tortious act in order to be held liable for concerted activity); Boyanowski v. Capital Area Intermediate Unit, 215 F.3d 396, 405–06 (3d Cir. 2000) ("[W]e are unaware of any jurisdiction that recognizes civil conspiracy as a cause of action requiring no separate tortious conduct.") (quoting In re Orthopedic Bone Screw Prods.

---

rejecting the allegation that TASC had materially breached their contract when TASC attempted to hire the consultant from Plaintiff in 2014. Judge Glazer ruled in relevant part:

> The breach, if it was a breach, was immediately cured, with the transfer reversed and the employee taken off the TASC payroll. . . . No evidence was provided of damage to Acclaim resulting from the attempted transfer. This simply cannot be a material breach that would terminate the contract. It is axiomatic that a party's duties under a contract are only discharged if there is an uncured material breach. Id. at 3.

To the extent that Plaintiff is making the same argument in this litigation, Plaintiff is estopped from doing so. See Burlington N. R.R. Co. v. Hyundai Merchant Marine, 63 F.3d 1227, 1231–32 (3d Cir. 1995) ("[P]rerequisites for the application of issue preclusion are satisfied when: '(1) the issue sought to be precluded [is] the same as that involved in the prior action, (2) that issue [was] actually litigated; (3) it [was] determined by a final and valid judgment; and (4) the determination [was] essential to the prior judgment.'"). Here, it appears that Plaintiff is raising the same issue that it argued in state court (i.e., that Defendant TASC materially breached the Plaintiff-TASC Agreement in September 2014). That issue was actually litigated and determined by a final and valid judgment (i.e., the granting of summary judgment), and the determination that Defendant TASC did not materially breach the Plaintiff-TASC Agreement was essential to Judge Glazer's ruling.

12

Liab. Litig., 193 F.3d 781, 789, n. 7 (3d Cir. 1999)). Accordingly, I will grant Defendants' Motion for Judgment on the Pleadings as to Counts II and III as well.[5]

## V. CONCLUSION

For the foregoing reasons, I conclude that Defendants' Motion for Judgment on the Pleadings on all counts should be granted. The Complaint is dismissed and Plaintiff will not be granted leave to amend.[6]

An appropriate Order follows.

---

[5] Defendants also argue that there is no precedent under Pennsylvania law for a claim of aiding and abetting tortious interference. Because I find that Plaintiff has not pled sufficient facts to establish the tortious interference claim, I need not reach the merits of this argument.

[6] I find that leave to amend and refile would be futile. See Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000). Ordinarily, Federal Rule of Civil Procedure 15 would permit a party to amend a complaint, but a court may deny such right on grounds of undue delay, bad faith, dilatory motive, prejudice, or futility. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997). "Futility" here requires examining whether amending the complaint could potentially cure the pleading defects. United States v. Union Corp., 194 F.R.D. 223, 237 (E.D. Pa. 2000). Here, Plaintiff's complaint is dismissed for failure to allege lack of justification for Defendants' conduct. Because the Plaintiff-TASC Agreement explicitly permitted Defendant Northrop to hire Plaintiff's resources without limitation beyond a potential conversion fee, I find that any leave to amend would be futile.